**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CAROL THOMAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-00699** |
| | ) | **Judge Aleta A. Trauger** |
| **CBC, LLC, formerly known as MAR** | ) | |
| **JOE ENTERPRISES, a Tennessee** | ) | |
| **domestic limited liability company,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is the Motion for Summary Judgment (Doc. No. 21) filed by defendant CBC, LLC ("CBC"), seeking judgment in its favor on the sole count asserted in plaintiff Carol Thomas' Complaint (Doc. No. 1): a claim for violation of the Fair Debt Collection Practices Act ("FDCPA"). For the reasons set forth herein, the motion will be granted and this case, dismissed.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated by a citation to the actual evidence in the record, the facts set forth herein are undisputed and are drawn from the plaintiff's Responses to Defendant's Statement of Undisputed Facts (Doc. No. 23-1) or the defendant's Responses to Plaintiff's Statement of Undisputed Facts (Doc. No. 25-2).

On November 20, 2019, Thomas obtained her Equifax[1] "credit disclosure" and noticed that

---

[1] The court takes judicial notice that Equifax is one of the three national credit bureaus (along with Experian and TransUnion) that collect consumer credit information. The credit bureaus are required by law to ensure that the information they collect is accurate and to provide consumers with the opportunity to correct mistakes. *See* https://www.consumer.ftc.gov/articles/free-credit-reports.

defendant CBC was reporting five debts in the total amount of $738 that the plaintiff allegedly owed to non-party Tennessee Orthopaedic Alliance ("TOA"). CBC was identified on the November 2019 credit disclosure as the collection agency to contact in connection with the five debts to TOA ("TOA debts"). (*See* Doc. No. 23-3.[2]) CBC, in the course of its business, causes debts owed to its clients to be posted with the national credit bureaus, including Equifax.

On November 25, 2019, plaintiff's counsel, on behalf of the plaintiff, mailed a letter to CBC, providing notice that Thomas disputed the TOA debts. CBC received the letter. (*See* Doc. No. 21-2, at 5.)[3] CBC, however, did not report to Equifax that the TOA debts were disputed. Instead, effectively contemporaneously with its receipt of the plaintiff's letter, CBC received instructions from TOA to remove all of its consumer debts from the national credit bureaus, including Equifax. (Doc. No. 21-3, Bays Aff. ¶ 6.) Pursuant to TOA's instruction, CBC instructed the credit bureaus, including Equifax, via electronic communications transmitted on December 3, 2019, to remove all of TOA's accounts from their services. (Bays Aff. ¶¶ 7, 8; *see also* Doc. No. 25-1, Bays Decl. ¶¶ 5–7; *id.* at 4–5, Bays Decl. Ex. A.)

Penny Bays, who has worked for CBC for twenty-six years and has been a business manager for CBC for eighteen years, does not recall that there has ever before been "an issue raised as a result of one of the credit bureaus not removing a debt as requested by CBC." (Bays Aff. ¶¶

---

[2] Contrary to the specific allegations in the Complaint (Doc. No. 1 ¶ 7) and in her Statement of Undisputed Facts (Doc. No. 23-2 ¶ 1), the record reflects that the plaintiff obtained a "Credit Karma" summary of her Equifax credit report. (Doc. No. 23-3.) This summary was not created by Equifax. According to its website, Credit Karma is a free service that "work[s] with Equifax and TransUnion . . . to give [its] members access to their credit scores for free," among other services. https://www.creditkarma.com/about (accessed June 23, 2021).

[3] The plaintiff testified in her deposition that she did not actually dispute the amounts owed to TOA; she was simply unable to pay the charges. She was working with a credit repair company to repair her credit by consolidating her bills and making a payment every month to clear up the debts she owed. (Thomas Dep. 21–22, Doc. No. 22-2.)

3, 9.) Consequently, she asserts, CBC had "no reason to confirm that its instructions to Equifax had been carried out." (*Id.* ¶ 10.) Moreover, as the plaintiff concedes, if CBC had checked the plaintiff's credit report to confirm whether Equifax had complied, it would have risked further harming Thomas' credit because of how credit checks are counted by the national credit bureaus.

There is no dispute that TOA's removal of the plaintiff's debts from the credit bureaus, including Equifax, would have been more beneficial to Thomas than simply having them denoted as disputed on her credit history. If Equifax had removed the plaintiff's TOA accounts as requested by CBC, there would not have been any TOA debts on the plaintiff's credit history to mark as disputed. (Bays Aff. ¶ 13; *see also* Doc. No. 21-4, Nichols Decl. ¶ 8.)

Thomas attempts to refute CBC's assertions that it notified Equifax on December 3, 2019 to remove TOA's debt reports from its system, but she does not point to any evidence in the record that actually calls that evidence into dispute. Instead, she points to the Credit Karma summary of her Equifax credit report that she accessed on February 21, 2020. (*See* Doc. No. 23-4, at 4–5.) On that date, nearly three months after Thomas notified CBC that the TOA debts were disputed, the Credit Karma summary of her Equifax report continued to show the TOA debts as past due and did not show that they were disputed. In addition, as of February 21, 2020, Credit Karma's website reflected the "Date Last Reported" for each of these debts as December 18, 2019, three weeks *after* CBC claims it notified Equifax to remove the TOA debts from its system altogether. (*Id.*) Based on the information obtained from Credit Karma, the plaintiff asserts that CBC "failed or refused to flag the [TOA debts] as disputed, in violation of the FDCPA," and that the February 21, 2020 report is evidence that CBC communicated with Equifax about the TOA debts on December 18, 2019 without identifying them as disputed. (Doc. No. 23-2, Pl.'s Statement of Undisp. Facts ¶ 6.)

The defendant filed a Reply to respond to this argument, along with the Declaration of

Penny Bays, in which Bays states that it has been her "practice for many years" to send her "reports and instructions to the credit bureaus on or about the third or fourth day of each month." (Bays Decl. ¶ 1.) Bays affirmatively avers that she "did not send a report to Equifax on or about December 18, 2019 as Equifax[4] erroneously indicates on its February 21, 2020 report for Carol Thomas." (*Id.*) She reaffirms that she instructed the credit bureaus, including Equifax, to remove all of TOA's accounts, including Carol Thomas', when she did her normal monthly report to the credit bureaus on December 3, 2019. (*Id.* ¶ 2.)

> Regarding the erroneous date on the Equifax Report, Bays states:

> The only explanation I can give for Equifax showing a CBC report of the existence of Plaintiff's TOA debts on December 18, 2019 is that Equifax must be referring to one of the reports I submitted for CBC before my December 3, 2019 instructions to remove TOA debts. Equifax apparently refers to the "report date" as to [sic] the date it inputs the submitted data onto its system and not to the date that the data is in fact submitted.

(*Id.* ¶ 3.) More to the point, according to Bays, "CBC has no control over when or how Equifax inputs data from CBC or how Equifax describes the report date of the data that CBC submits to it." (*Id.* ¶ 4.)

Attached to Bays' Declaration are documents labeled as Exhibits A, B, and C. Bays explains that Exhibit A shows

> Plaintiff's debts to [TOA], Plaintiff's identifying information and most critical for this Motion, the instruction to delete the debt. This instruction appears on the fourth line of data for each debt, immediately above "Thomas." The code "DA" instructs the bureaus to remove the debt from its listing.

(Bays Decl. ¶ 5; *see also* Doc. No. 25-1, at 4–5.) The court notes that the date (12032019) appears on the first line of code on the report that makes up Exhibit A and is embedded in each entry for

---

[4] As noted, the report filed by the plaintiff was not actually an Equifax report, but Credit Karma's summary of Equifax's credit information for the plaintiff.

TOA. (Doc. No. 25-1, at 4–5.) Bays states that this document was produced to the plaintiff with CBC's Rule 26(a)(1) Initial Disclosure. (Bays Decl. ¶ 5.)

Exhibit B to the Bays Declaration consists of excerpts from CBC's internal files, including Bays' log of activity on the Thomas case. The activity log for "Guarantor THOMAS CAROL Case# 191550803" reflects, in relevant part: "12/03/19  Credit Reported – WITHDRAWN  09:49 TN Penny." (Doc. No. 25-1, at 6.) Likewise, CBC's internal summary (Exhibit C) reflects the same information. A screen shot of a form identifying the client as TOA and the "Guarantor" as Carol Thomas shows: "12/03/19 09:49 Credit Reported –WITHDRAWN PEN." (*Id.* at 7.) Bays states that these documents, too, were produced to the plaintiff with CBC's Initial Disclosure. (Bays Decl. ¶¶ 6–7.) Finally, Bays states that "[n]owhere in the CBC files for Plaintiff's debts in dispute appears the date, December 18, 2019." (*Id.* ¶ 8.)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine.'" *Id.*

"[A] fact is 'material' within the meaning of Rule 56(a) if the dispute over it might affect the outcome of the lawsuit under the governing law." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 725 (6th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Peeples v. City of*

*Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record—including, *inter alia*, depositions, documents, affidavits, or declarations—that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018); Fed. R. Civ. P. 56(c)(1)(A). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018).

## III. DISCUSSION

CBC moves for summary judgment on the basis that it did not communicate with the credit bureaus about the plaintiff's TOA debts at any time after December 3, 2019—that is, at any time after it directed the credit bureaus to remove all of TOA's consumer debts—and that it cannot be liable for Equifax's failure to comply with that directive or for failing to verify that Equifax had done so. In response, the plaintiff maintains that the fact that the debts were still listed and not marked as disputed through February 21, 2020 and that her February 21, 2020 Credit Karma summary of her Equifax Credit Report reflects a "Last Reported" date of December 18, 2019, together, give rise to a material factual dispute as to whether CBC "again reported the disputed debts to Equifax on December 18, 2019 and again failed to report the disputed debt as disputed." (Doc. No. 23, at 2; *see also id.* at 1–2 ("Defendant violated 15 U.S.C. § 1692e(8) of the [FDCPA] by continuing to report its trade lines for Plaintiff without reporting that Plaintiff disputed the accounts.").) In other words, the plaintiff contends that there is at least a material factual dispute as to whether CBC communicated with Equifax on December 18, 2019 about the TOA debts without informing Equifax that the debts were disputed. In addition, the plaintiff appears to be

arguing that there is a material factual dispute as to whether CBC actually directed Equifax to de-list all of its debts. Aside from that, Thomas seems to assume that CBC had an affirmative obligation to notify Equifax that her TOA debts were disputed.

Among other things, the FDCPA prohibits any debt collector from using "false representation[s] or deceptive means" to collect a debt. 15 U.S.C. § 1692e. As relevant here, the statute specifically makes it illegal to "[c]ommunicat[e], or threaten[] to communicate to any person credit information which is known or which should be known to be false, *including the failure to communicate that a disputed debt is disputed*." 15 U.S.C. § 1692e(8). This is the provision upon which the plaintiff's FDCPA claim is premised.

As the Eighth Circuit has explained, however, Section 1692e(8) does not impose on debt collectors an affirmative duty to report that a consumer disputes a debt. *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008). Instead, the provision applies to the "communication" of "credit information." *Id.* Thus, "if a debt collector elects to communicate 'credit information' about a consumer, it must not omit [to convey] that the consumer has disputed a particular debt." *Id.* (citing FTC Staff Commentary, 53 Fed. Reg. 50097–02, 50106 (Dec. 13, 1988), as stating that, "[i]f a debt collector knows that a debt is disputed by the consumer . . . and reports it to a credit bureau, he must report it as disputed," but that if a "debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported"); *see also Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361 (6th Cir. 2012) (noting that "the Federal Trade Commission's Staff Commentary on the FDCPA is instructive").

Although the parties have devoted a substantial amount of ink to arguments about CBC's communication of TOA's directive that all of its consumer debts be withdrawn from the credit bureau reports and characterize this as an affirmative defense that obviated CBC's obligation to

report that the plaintiff disputed the TOA debts, the law is clear that CBC did not actually have an affirmative obligation to report that dispute unless it communicated with the credit bureaus about the plaintiff's credit information after learning of the dispute. Moreover, as set forth above, the plaintiff does not contend that CBC's communication with the credit bureaus directing them to remove TOA's debts constituted a communication of credit information about her. Instead, she attempts to dispute that the communication ever occurred.

The court finds, first, that there is no genuine factual dispute as to whether CBC directed the credit bureaus to de-list TOA's debts. The plaintiff has no basis for refuting Bays' testimony in that regard, which is supported by Bays' Affidavit, filed with CBC's Motion for Summary Judgment, and by Bays' Declaration and Exhibits A, B, and C, documentation that the defendant produced with its Initial Disclosure and filed with its Reply, in response to the plaintiff's argument that Bays' factual allegations were not supported by documentary evidence. Although the defendant arguably should have produced the referenced exhibits with Bays' initial Affidavit, its failure to do so is certainly not fatal to its arguments.

Moreover, even if a genuine dispute existed, it would not be material, because CBC did not have an affirmative duty to notify the credit bureaus that Thomas disputed the TOA debts. Instead, it only incurred such an obligation if it communicated with the credit bureaus about Thomas' credit information after having learned that she disputed the debts. Again, the parties do not contend that directing the credit bureaus to de-list TOA's debts would have qualified as a communication about the plaintiff's credit information *per se* that would have given rise to an obligation to report that the plaintiff disputed the debts that were to be de-listed altogether.

Therefore, the dispositive question is whether, as the plaintiff argues, there is a genuine dispute as to whether CBC communicated with Equifax on December 18, 2019 about the TOA

debts without providing notice that the plaintiff disputed the debts, in violation of § 1692e(8). The court finds that there is no genuine factual dispute. The Credit Karma report upon which the plaintiff relies was not actually created by Equifax. Even if it had been, and viewed in the light most favorable to the plaintiff, the Credit Karma report does not actually prove anything. Next to each of the plaintiff's TOA debts the report includes a notation: "Last Reported Dec. 18, 2019" (Doc. No. 23-4, at 4–5), but nothing on the report indicates *who* did this reporting or what data the report was based on. December 18, 2019 could be the date Equifax updated its report (erroneously failing to heed the December 3, 2019 directive to remove the TOA accounts) or the date Credit Karma last updated its records. The form does not indicate that CBC communicated with Equifax on that date. It is simply silent on that question. It certainly gives rise to the *possibility* that CBC communicated with Equifax on that date, but a possibility is not the same as *probability*. As the Supreme Court has stated:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a *preponderance of the evidence* that the plaintiff is entitled to a verdict . . . .

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (emphasis added). The "mere possibility" of a factual dispute is not enough. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). In this case, no reasonable jury could find, based solely on the "Last Reported" date on the Credit Karma Report, that CBC communicated with Equifax on that date. And, on the other side of the coin, as set forth above, Penny Bays testifies unequivocally in her Declaration that she "did not send a report to Equifax on or about December 18, 2019," that CBC has "no control over when or how Equifax inputs data from CBC or how Equifax describes the report date of the data that CBC submits to it," and that nowhere in CBC's files for Carol Thomas does the date December 18, 2019 appear. (Bays Decl. ¶¶ 1, 4, 7.)

In sum, the court finds that defendant did not have an affirmative duty to communicate with the credit bureaus, including Equifax, about the plaintiff's credit information. *Wilhelm*, 519 F.3d at 418. The plaintiff does not contend, and the court does not find, that directing the credit bureaus to de-list all of TOA's debts constituted a communication about the plaintiff's credit information giving rise to an affirmative obligation to also note that the plaintiff disputed her TOA debts. And most importantly, there is insufficient evidence in the record to permit a reasonable jury to conclude that CBC communicated with Equifax on or around December 18, 2019 (or at any time after receiving notice that the TOA debts were disputed) about the plaintiff's credit information. The plaintiff cannot prove an essential element of her § 1692e(8) claim: that the defendant "[c]ommunicat[ed] . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). The defendant, therefore, is entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth herein, the court will grant CBC's Motion for Summary Judgment. (Doc. No. 21.) An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge